1  Lisa T. Belenky (SBN 203225)
   Hallie E. Kutak (SBN 322407)
2  CENTER FOR BIOLOGICAL DIVERSITY
   1212 Broadway, Suite 800
3  Oakland, California 94612
   Telephone:   (510) 844-7117
4  Facsimile:    (510) 844-7150
   lbelenky@biologicaldiversity.org
5  hkutak@biologicaldiversity.org

6  Attorneys for Center for Biological Diversity

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT COURT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BUREAU OF LAND MANAGEMENT; DEB HAALAND, U.S. Secretary of Interior; JEFFERY CHILDERS, Acting Field Manager, Barstow Field Office, California Bureau of Land Management; and MICHELLE "SHELLY" LYNCH, District Manager, California Desert District.<br><br>Defendants. | Civ. No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. This case challenges the failure of the U.S. Bureau of Land Management ("BLM") to reinitiate Endangered Species Act ("ESA") section 7 consultation with the U.S. Fish and Wildlife Service ("FWS") regarding recreational use at Borehole Spring, where overuse has had catastrophic impacts on the Amargosa vole and its designated critical habitat.

2. The Amargosa vole is one of the most narrowly distributed subspecies of mammals in the world, with only a few hundred individuals left in the wild. Recent estimates show that approximately one square kilometer of patchy habitat for this species remains, making this species extremely vulnerable to human encroachment and other threats. The Amargosa vole is protected as "endangered" under the ESA.

3. The Amargosa vole's remaining suitable habitat is primarily located in and around Borehole Spring, a perennial hot water source, in the Mojave Desert on public lands managed by BLM. Far from the little-known desert stop over it had been, Borehole Spring in recent years has become a trendy hot springs destination. Overnight camping has become common, and tour buses have been observed bringing large numbers of people to the site.

4. Recent studies have concluded that the Amargosa vole has an 85 percent chance of going extinct by 2026 if intensive management of impacts is not implemented. The root of the problem is increased recreational use—both at Borehole Spring and in the town of Tecopa Hot Springs—which has fragmented, degraded, and destroyed the voles' critical habitat.

5. For nearly two decades, BLM's management of Borehole Spring has consisted primarily of two signs – one forbidding overnight camping and a second reminding visitors to pick up their trash. There are no sanitary facilities at the site.

6. The ESA requires that consultation be reinitiated in certain circumstances, including when new information reveals effects of an action on listed species or critical habitat that were not previously considered. This process exists to ensure that BLM's actions—including its management of recreational use of public lands—are not likely to jeopardize the survival and recovery of listed species or destroy or adversely modify designated critical habitat.

Case 2:22-cv-08824-JLS-E     Document 1     Filed 12/06/22     Page 3 of 19     Page ID #:3

7. For several years, the Center for Biological Diversity ("Center" or "Plaintiff"), along with other local community groups invested in the Amargosa vole's continued existence, has asked BLM to reinitiate consultation based on the new information that the increased popularity of the Borehole Spring, and the constant, unmonitored use, was destroying the Amargosa vole's critical habitat. On August 19, 2021, the Center provided formal notice of intent to sue BLM if it did not reinitiate consultation regarding impacts of activities authorized by BLM on the Amargosa vole.

8. To date, BLM has failed to reinitiate. BLM's failure to comply with the ESA is directly harming the Amargosa vole and its critical habitat, undermining the prospects of recovery, and may be jeopardizing the vole's ability to survive. The Amargosa vole is suffering and will continue to suffer until recreational use at Borehole Spring is properly managed. Plaintiff therefore asks this Court to compel BLM to reinitiate consultation with FWS to protect the Amargosa vole that depends on the fragile habitat at Borehole Spring, as the Endangered Species Act requires.

**JURISDICTION AND VENUE**

9. Plaintiff brings this action pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), which waives BLM's sovereign immunity. Pursuant to this provision, Plaintiff sent BLM a 60-day notice letter of its intent to sue for all ESA violations listed herein. *See id.* § 1540(g)(2)(A)(i). Plaintiff sent its notice letter—regarding the need to reinitiate consultation with FWS on impacts to Amargosa voles—on August 19, 2021 (attached as Exhibit A). BLM has not remedied the legal violations Plaintiff identified in the 60-day notice letter and now alleged in this Complaint.

10. This Court has jurisdiction over Plaintiff's claims under 16 U.S.C. § 1540(g) and 28 U.S.C. § 1331 (federal question) and may issue a declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201–02.

11. Venue lies in the Central District of California pursuant to 28 U.S.C. § 1391(e)(1)(A)&(B). BLM's Barstow Field Office and its California Desert District Office are

Complaint for Declaratory and Injunctive Relief

both located in this District, in San Bernardino County and Riverside County, respectively. BLM's decisions regarding the management of Amargosa vole and its critical habitat are made in these offices and so "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

**PARTIES**

12. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the "Center") is a non-profit 501(c)(3) conservation organization incorporated in the State of California with offices across the country, including in Washington D.C., Arizona, California, Florida, New York, North Carolina, Oregon, and Washington, and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats both in the United States and abroad. The Center has over 81,800 active members, including members who reside in and travel to areas where Amargosa voles are found. The Center and its members are concerned with the conservation of imperiled species, including the Amargosa vole, management of public lands, and the effective implementation of the ESA.

13. The Center brings this action on behalf of itself and its members, many of whom enjoy observing and appreciating the Amargosa vole and other species in their natural habitat in the Amargosa River and Borehole Spring specifically. The Center's members regularly engage in these activities and will continue to do so in the future.

14. For example, one of Plaintiff's members has a scientific, educational, and aesthetic interest in the Amargosa vole, has attempted to observe the vole and its habitat on many occasions and intends to do so in the future. This member lives along the Amargosa River, and frequently visits Borehole Marsh, outside of Tecopa Hot Springs, in Inyo County, California. This member lives 7 miles away from Borehole Marsh, visits it at least weekly and has concrete plans to continue frequent visits to Borehole Marsh to view Amargosa vole habitat throughout the remainder of 2022 and into 2023. Moreover, this member has engaged and will continue to engage in volunteer work to support Amargosa vole conservation. Other members also have

scientific and educational interests in the survival of this imperiled species and have visited the Borehole Spring area to attempt to observe the Amargosa vole and to see its habitat and also intend to return in the near future, in the Spring of 2023.

15. Plaintiff and its members are harmed by BLM's failure to reinitiate consultation with FWS. This failure harms Amargosa voles that depend on the health of the ecosystem of the Borehole Spring, thereby decreasing Plaintiff's members' opportunities to observe and enjoy the voles in their natural habitat.

16. An order from this Court declaring that BLM is in violation of the ESA and its implementing regulations, and directing BLM to reinitiate consultation with FWS, will remedy Plaintiff's injuries. The ESA consultation process will ensure that BLM's actions and the activities it authorizes do not jeopardize the Amargosa vole or destroy or adversely modify its critical habitat. The result will ensure that there is better management and protection of the Amargosa vole and its critical habitat in the Borehole Spring where Plaintiff's members observe and enjoy these species.

17. Defendant BLM manages more land than any other federal agency in the United States. The BLM's mission, which is defined by the Federal Land Policy and Management Act of 1976, directs the agency to manage public lands generally for multiple uses while conserving natural, historical, and cultural resources, and the statute specifically directs BLM to manage public lands within the California Desert Conservation Area ("CDCA") "to protect the scenic, scientific, and environmental values of the public lands of the California Desert Conservation Area against undue impairment, and to assure against pollution of the streams and waters within the California Desert Conservation Area." 43 U.S.C. § 1781(f). The ESA requires that BLM consult with the FWS regarding the impacts of the activities it authorizes on these public lands on listed species and designated critical habitats, including the Amargosa vole and its critical habitat at Borehole Spring, and, through consultation, to ensure that its actions and inactions in managing these public lands land do not jeopardize the survival and recovery of that ESA-listed species or destroy or adversely modify its critical habitat.

18. Defendant JEFFERY CHILDERS is the Acting Field Manager of the BLM Barstow Field Office and sued in his official capacity. In this position, Jeff Childers supervises the Multi-Resources Staff in the Barstow Field Office and serves as the Principal Representative of the Field Manager for public lands and resources issues within the Field Office. The Acting Field Manager must review and revise resource management plan amendments and coordinate the implementation of activity plans. This includes ensuring compliance with the National Environmental Policy Act and Endangered Species Act.

19. Defendant MICHELLE "SHELLY" LYNCH is the District Manager of BLM's California Desert District and sued in her official capacity. In this position, she is responsible for management of 11 million acres of public lands spanning nine counties and is responsible for the overall program direction, execution, and approval of activities within the California Desert District and ensuring compliance with the National Environmental Policy Act and Endangered Species Act.

## FACTUAL BACKGROUND

### The Amargosa Vole

20. The Amargosa vole is a small mammal which occupies a tiny range in the Mojave Desert, specifically a 3.5 kilometer stretch of the Amargosa River near Tecopa, California. The Amargosa vole is exclusively dependent on some 36 patches of wetlands and marshes formed by groundwater-fed springs and seeps in the area. These wetlands are primarily composed of Olney's three-square bulrush.

21. The vole's wetland habitat is part of the Amargosa River, a series of hydrologically disjunct springs which extends from Beatty, Nevada to Badwater in Death Valley National Park. Currently, the vole's habitat is divided into about thirty-six individual patches with only marginal connectivity, ranging from just north of Tecopa Hot Springs to Tecopa.

22. Habitat degradation led to the Amargosa vole's listing as an endangered species by the state of California in 1980, followed by a federal listing as "endangered" under the Endangered Species Act in 1984 (49 Fed. Reg. 45160 (Nov. 15, 1984).) Approximately 4,520

acres of critical habitat was designated, spanning much of the wetland area surrounding and including the town of Tecopa Hot Springs. The threats cited in the listing decision include reductions and modifications to the vole's marsh habitat resulting from human encroachment. The listing decision also notes that such habitat destruction had already resulted in the extinction of the Tecopa pupfish (47 Fed. Reg. 2317 (Jan. 15, 1982)), the first species to be removed from protections under the Endangered Species Act due to extinction.

23. Voles need permanent water sources for survival, making them especially vulnerable to drought and climate. Three-square bulrush—the vole's sole food source—only grows where water comes to the surface. During the 2012-2015 drought, bulrush habitat declined by 37 percent. Ongoing groundwater overdraft threatens the groundwater flow that sustains the Amargosa River and the springs in Tecopa. Spring diversion from the town of Tecopa Hot Springs further compounds the harm to vole habitat, as recognized by FWS in its 2002 Biological Opinion.

24. Water-related threats from drought, groundwater pumping, and spring diversion pose an existential threat to the species, making it even more important to reduce other threats to the vole from direct human use of their habitat. Conservation of the remaining vole populations and habitat is essential to their survival.

25. Small, isolated patches of habitat are more likely to accelerate local extinction. Voles will move to nearby patches if there is a vegetated, protective corridor but will not travel exposed routes. Genetic research conducted in 2002 revealed that the species has low genetic diversity, which further confirms that water consistency, habitat connectivity, and habitat quality are the highest priorities for vole survival.

26. One of the most tangible ways to prevent the extinction of the Amargosa vole is to create and sustain "megamarshes": interconnected suitable habitat patches of sufficient size to function as a source population from which voles can disperse. Megamarshes allow voles to create runways in the vegetation that allow them to move about their habitat, encouraging

genetic diversity. Generally, these few robust marshes support source populations, which then disperse into neighboring marshes.

27. The creation and enhancement of megamarshes through habitat restoration and water management links separated marsh patches, increases connectivity and total habitat, and allows for free movement of voles among subpopulations, all of which decrease the likelihood of subpopulation extinction.

28. The Borehole Marsh boasts the most robust vole population. BLM has identified Borehole Marsh as the voles' "main habitat."

29. The water that year-round sustains Borehole Marsh comes from Borehole Spring. Borehole Spring began as an artificial water source, which was drilled in 1976 by the Stauffer Chemical Company for mineral exploration. The drillers hit hot water at 350 feet, and the flow continues to this day, despite numerous efforts to plug the hole. The spring continuously discharges hot water in a pool approximately 10 meters wide, which then flows down a channel approximately 200 meters long through dense bulrush marsh. The water reaches Tecopa Hot Springs Road, wherein a large portion of it pools back toward the source, creating a dense bulrush wetland. Remaining water then passes underneath Tecopa Hot Springs Road through a culvert and creates another wetland, along with other downstream marshes and pools. FWS has noted that the consistent water discharge from Borehole Spring ensures the necessary conditions for robust vole habitat.

30. The health of the entire Amargosa vole population parallels the health of Borehole Marsh. In 2009, culvert work on Tecopa Hot Springs Road caused a significant reduction in the water level near Borehole Spring, which mostly drained Borehole Marsh. By 2014, up to 90 percent of marsh vegetation had been lost, and from 2012 to 2015, population density of voles near Borehole Spring decreased by 80 percent. The Borehole Marsh was in catastrophic decline, and as a result, the vole was on the knife edge of extinction, with only 50-75 individuals left in the wild. Even with this dwindling habitat, 85 to 90 percent of the vole population nevertheless was estimated to still occur there.

31. In response, in 2013 the ad hoc Amargosa Vole Recovery Team was formed. The team is comprised of private landowners along with federal, state, non-profit, and academic institutions, including FWS, BLM, U.S. Geological Survey, California Department of Fish and Wildlife, Amargosa Conservancy, UC Davis, UC Berkeley, Purdue University, and Inyo County Road Department, with the common goal of saving the vole and recovering its populations. Starting in 2013, the ad hoc Amargosa Vole Recovery Team completed several management actions to benefit the Amargosa vole, including stabilizing the habitat at Borehole Marsh.

32. Due to the Recovery Team's restoration efforts, by 2017, bulrush density and cover increased by 500 percent compared to pre-restoration levels. Now, post-restoration, the marsh complex is thought to be the "most dependable and sustainable patch" of Amargosa vole habitat in the world, serving as a source population for voles colonizing other marshes.

33. The Amargosa Vole Recovery Team's restoration efforts lay bare that the continued viability of Borehole Marsh is critical to the vole's survival.

**BLM Management of Amargosa Vole Habitat**

34. Management of BLM lands in the Amargosa vole's habitat must conform to the CDCA Plan, which includes the specific management requirements laid out in the Northern and Eastern Mojave ("NEMO") bioregional plan amendments and the Desert Renewable Energy Conservation Plan ("DRECP") amendments. BLM last updated the NEMO amendments in 2002 and adopted the DRECP in 2016.

35. The Amargosa vole's entire habitat is in lands designated as "California Desert National Conservation Land" and an "Area of Critical Environmental Concern" (ACEC). The CDCA refers to the designated lands that include Borehole Marsh as the "Amargosa South" unit (attached as Exhibit B).

36. The "overarching goals" for this unit are to "protect biological values, including habitat quality, populations of sensitive species, climate refugia and landscape connectivity" while providing for "compatible uses." Among the nationally significant ecological values of the Amargosa South unit are the "permanent flowing water and wetlands" that serve as a "magnet

for a diversity of plant and wildlife species, including many special status species." Exhibit B at 249. The nationally significant scientific values of the Amargosa South unit identify the need for BLM to conduct a long-term demographic/habitat assessment for the Amargosa vole.

37. The DRECP directs BLM to undergo clear and specific management actions to protect these identified nationally significant values. These include clear and specific management actions for maintaining water flow in the Amargosa South unit, such as securing water rights to conserve existing water sources, monitoring surface water quality, and monitoring the uses of water stemming from BLM-authorized activities. Exhibit B at 251. These also include actions to maintain and improve the condition of vegetation, which includes tracking changes in vegetation over time and identifying additional recovery needs and new conservation strategies to protect that vegetation. *Id.*

38. The DRECP also directs BLM to protect the Amargosa vole and its habitat by "preventing irreparable damage," including monitoring and evaluating habitat trends and conditions affecting listed species on public lands. *Id.* at 253.

39. For recreation, the management actions are quite general. The DRECP prohibits overnight camping in the Amargosa South Unit. The sole management action is: "Post interpretive signs along highly used routes as funding is available." *Id.* at 255. Otherwise, recreational use of Borehole Spring is not specifically mentioned in the Plan.

40. While the DRECP allows for multiple uses not specifically covered by the management actions, these uses are only allowed as long as they are consistent with the nationally significant values. The DRECP may be silent on recreation at Borehole Spring, but any recreation there must be consistent with the nationally significant values and management actions listed above.

41. For additional management direction, the BLM continues to rely on the NEMO plan, an amendment to the CDCA Plan, adopted in 2002 (attached as Exhibit C). The NEMO Plan was intended to be the mechanism to implement the U.S. Fish and Wildlife Services' 1997 Recovery Plan for the Amargosa Vole. NEMO developed "Recommended Special Management

Actions for the Recovery of the Amargosa Vole" with the objective to "to minimize the threats that imperil the Amargosa vole so that the species can be downlisted to 'Threatened' status" Exhibit C at Appendix H- 1. These management actions require that BLM:

> "b. Implement measures to secure extant populations and non-occupied habitat;
>     i. Secure water sources and water rights for groundwater and springs critical to maintaining and enhancing upland habitats and lowland habitats.
> …
>     v. Prevent further loss of habitat or water quality by road construction, maintenance, or other construction activities.
> …
>     viii. Prohibit all camping and campfires on public lands.
> c. Identify threats to the Amargosa vole and/or habitat.
> d. Develop interim management plan to protect habitats.
> e. Implement management plan."

Exhibit C at Appendix H- 2.

### Increasing and Unsustainable Recreational Use at Amargosa Vole Habitat

42. Borehole Marsh, which contains critical habitat designated for the Amargosa vole's survival, has become an increasingly popular hot springs destination, colloquially referred to as "Tecopa Natural Hot Springs" or the "Tecopa Mud Baths."

43. The Los Angeles Times had an article on the cover of its travel section in 2020 that gave detailed directions on how to get to Borehole Spring. The Palm Springs Desert Sun did the same in 2016. In a 2017 article, the New York Times noted that "[t]he Bureau of Land Management allows bathers to use the hot springs adjacent to the habitat of the Amargosa vole, an endangered species which numbers a few hundred."

44. In 2015, an effort was made to address the issue by a local nonprofit, the Amargosa Conservancy, and local residents. An ad hoc monitoring program was begun, and user data was collected on an almost daily basis for three and a half months. This monitoring revealed near constant use of the hot springs at all times of day and into the evening.

45. Monitoring data in the spring of 2015 showed almost no times when there were no people at Borehole Spring, and regularly recorded 30 or more visitors at the site. On 24 occasions, off-leash dogs were documented. Out of 109 data points collected, only three times

was there nobody at Borehole. More recently, from November 2021 to March 2022, out of 75 data points collected, on only four occasions was nobody there.

46. Use of Borehole Spring is not limited to casual, occasional bathing. People frequently camp nearby. People bathe in mud from the pool's bottom, considering it to be medicinal. People bring off-leash dogs to the site. Tour buses have been documented pulling up and unloading visitors. Campers have been observed making fires and leaving them to burn. People bring all-terrain vehicles and drive them adjacent to the marsh.

47. The mud and water of Borehole Spring are coveted as well. Searches of photographs on the internet on October 21, 2022 reveal numerous users covering themselves with mud scooped from the bottom of the spring. Indeed, there are anecdotal reports of users harvesting and selling the mud. On one occasion, users were observed with a shop vac and a generator, filling jugs of water for resale.

48. Despite the thousands of users annually, there are no restrooms. The monitoring program has documented human waste deposited directly into the bulrush Amargosa vole habitat. An informal fecal coliform test on water from Borehole Spring using an Aquavial brand home testing kit showed positive results for fecal coliform when tested on January 1, 2022, and again on January 4, 2022.

49. Unsurprisingly, two biological field technicians with US Geological Survey who frequented the site while monitoring the Amargosa vole noted that "[a]ctivities associated with the bathers – such as trampling of the marsh and dogs hunting voles, fire and off-road vehicles – pose indirect and direct threats" to the voles.

50. Back in 2002, BLM authorized recreational use at Borehole Spring, non-commercial "casual use," and determined that no specific management was required. Instead, BLM's 2002 plan determined it would be sufficient to manage the area under general guidelines.

51. Now the circumstances have changed. There is new information about the impacts of recreational use at Borehole Spring, but BLM has failed to reinitiate consultation with FWS to ensure the BLM management does not jeopardize the Amargosa vole or destroy or adversely

modify its critical habitat. The thousands and thousands of visitors who descend on Borehole Spring each year are having significant impacts on the Amargosa vole and its critical habitat that were not anticipated in 2002; therefore, BLM is required to reinitiate consultation.

## LEGAL BACKGROUND

52. In 1973, recognizing that certain species "ha[d] been so depleted in numbers that they are in danger of or threatened with extinction," Congress enacted the ESA, 16 U.S.C. §§ 1531–44, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id.* § 1531(a)(2), (b). Congress declared that it is "the policy of Congress that all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this Act." *Id.* § 1531(c)(1).

53. The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." *Id.* § 1532(3). The ESA's goal is not simply to prevent endangered and threatened species from becoming extinct, but to recover these species to the point where they no longer require the statute's protections.

54. Considered "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation," the ESA embodies the "plain intent" of Congress to "halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Valley Authority v. Hill*, 437 U.S. 153, 180, 184 (1978); see also *id.* at 185 (ESA section 7's legislative history "reveals an explicit congressional decision to require agencies to afford first priority to the declared national policy of saving endangered species" and "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies").

55. Section 7(a)(2) of the ESA imposes on federal agencies such as BLM a substantive duty to ensure that actions they authorize or carry out—including management of

public lands—are not likely to jeopardize listed species or destroy or adversely modify critical habitat designated for such species. 16 U.S.C. § 1536(a)(2). Such "action agencies" must discharge this obligation in consultation with the appropriate expert fish and wildlife agency, which for the Amargosa vole is the FWS.

56. Even after the procedural requirements of consultation are complete, the ultimate duty to ensure that an activity is not likely to cause jeopardy to a listed species or destroy or adversely modify critical habitat lies with the action agency.

57. The action agency's ESA obligations do not end after completing an initial consultation. The ESA also requires that consultation be reinitiated in certain circumstances where "discretionary Federal involvement or control over the action has been retained or is authorized by law." 50 C.F.R. § 402.16(a).

58. Where the action agency retains discretionary involvement or control over its action, it must reinitiate consultation:

(1) If the amount or extent of taking specified in the incidental take statement is exceeded; or

(2) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered.

50 C.F.R. § 402.16(a).

59. Once a federal agency initiates consultation on an action under the ESA, the agency cannot make "any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures." 16 U.S.C. § 1536(d). Section 7(d) prohibitions remain in effect throughout the consultation period and until the federal agency has satisfied its obligations under Section 7(a)(2) that the action will not result in jeopardy to the species or adverse modification of its critical habitat.

//
//

## PROCEDURAL HISTORY

60. With the 1976 Federal Land Policy and Management Act, Congress charged BLM with managing lands within the California Desert Conservation Area (CDCA). As part of BLM's duties, Congress directed BLM to prepare a comprehensive long-range management plan, called the California Desert Conservation Area Plan. The California Desert Conservation Area Plan as amended outlines the authorized uses of the Amargosa vole critical habitat area, including in and around Borehole Spring.

61. Over twenty years ago, BLM consulted with FWS regarding BLM's approval of the NEMO bioregional plan amendments to the CDCA Plan. This consultation included management of the Amargosa Vole and its critical habitat, including the area around Borehole Spring.

62. In 2002, FWS issued a 2002 Biological Opinion on the Amargosa vole (attached as Exhibit D), which found that the then-existing low-level of recreational use at Borehole Spring, the non-commercial "casual" use which was described and authorized under BLM's resource management plan, was not likely to jeopardize the continued existence of the Amargosa vole or destroy or adversely modify its critical habitat. Exhibit D at 29. The 2002 Biological Opinion did not specifically address the issue of recreational use of Borehole Spring. Little recreation was expected in the area, and as a result the potential impacts on the vole are largely dismissed in the 2002 Opinion:

> "…we anticipate that substantial recreation does not occur within habitat of the Amargosa vole because many desert users focus their activities on Amargosa Canyon. Additionally, the dense vegetation in the wetland habitat of the Amargosa vole likely discourages some degree of recreation. For these reasons, this program guidance does not appear to pose a substantial threat to the Amargosa vole and its critical habitat."

On this basis, FWS granted BLM "an exemption from the prohibitions against take for the incidental take of Amargosa voles that may result from casual use associated with recreation."

63. In 2016 when BLM adopted the DRECP amendments to the CDCA Plan, the FWS issued a new biological opinion (attached as Exhibit E). The DRECP Biological Opinion references the 2002 Biological Opinion for the Amargosa vole but provided no new analysis of the status of the species, then-current recreation use, or provide other specific bases for its finding that BLM management was not likely to adversely affect the Amargosa vole.

64. The FWS recommendations in the 2002 opinion rest on the assumption that people did not recreate in Amargosa vole wetland habitat in any significant numbers. Neither the FWS's 2002 Biological Opinion nor the 2016 DRECP Biological Opinions considered the impacts to the vole of the level of recreational use of the wetlands that is now occurring. Although continuing low use was anticipated in 2002, twenty years later, it is clear that current use of the wetland habitat is quite high. BLM inappropriately continues to rely on the decades-old 2002 biological opinion and the 2016 biological opinion, which both failed to address these issues in BLM's management of the Amargosa vole and the vole's critical habitat around Borehole Spring.

65. The ESA requirement that consultation be reinitiated is designed for this very situation: when new information reveals effects of an action on listed species or critical habitat that were not previously considered.

66. New information shows that there is increased recreation impacting dwindling Amargosa vole critical habitat. As explained below, the BLM has failed to control impacts from recreation despite clear indications that recreation has impacted the vole and its habitat.

67. Accordingly, consultation must be reinitiated to address the impacts of BLM management that authorizes the current recreational use of this area on the Amargosa vole and its critical habitat.

68. Plaintiff Center for Biological Diversity notified BLM and the FWS of their intent to sue over BLM's failure to reinitiate consultation in violation of ESA section 7. Exhibit A. Plaintiff explained that new information shows that increased recreational use is destroying and

degrading the habitat upon which the vole survives and is undoing the progress of restoration efforts, jeopardizing the continued existence of the vole.

69. BLM did not reinitiate consultation in response to Plaintiff's notice.

70. By allowing and authorizing activities to proceed that are impacting survival and recovery of the Amargosa vole and destroying or adversely modifying critical habitat, prior to the reinitiation and completion of consultation with FWS, BLM is failing to protect the Amargosa vole from jeopardy.

## CLAIM FOR RELIEF

### (Violation of ESA: Failure to Reinitiate Consultation with FWS)

71. Plaintiff hereby realleges, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 70.

72. Section 7(a)(2) of the ESA imposes a substantive duty on BLM to ensure that actions it authorizes or carries out—including management of public lands—are not likely to jeopardize listed species or destroy or adversely modify critical habitat designated for such species. 16 U.S.C. § 1536(a)(2). BLM is required to reinitiate consultation with FWS on a given action when "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered." 50 C.F.R. § 402.16(a)(2).

73. New information reveals that increased recreational use authorized by BLM at Borehole Spring is having effects on the Amargosa vole and its designated critical habitat that were not previously considered. For example, new information shows that large numbers of people are visiting Borehole Spring to bathe in the waters, and some trample the banks, remove the bottom mud layer, bring unleashed dogs that may predate the vole, and relieve themselves in the absence of available sanitary facilities. Some people are also driving vehicles in the fragile marsh area. Collectively, these activities imperil the most viable critical habitat remaining for the Amargosa vole.

74. BLM has failed to ensure that the activities authorized under the existing Plan are not likely to jeopardize the continued existence of the Amargosa vole and prevent destruction and adverse modification of its designated critical habitat.

75. By failing and refusing to reinitiate consultation with FWS on the impacts of increased recreational use on Amargosa voles, BLM is in violation of the ESA and its implementing regulations. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16(a)(2).

## REQUEST FOR RELIEF

Therefore, Plaintiff respectfully requests that this Court:

1. Declare that BLM is in violation of the ESA for failing to reinitiate consultation with FWS on the effects of authorized activities, including recreational use at Borehole Spring, on the Amargosa Vole and its critical habitat;

2. Order BLM to reinitiate consultation with FWS to ensure that BLM does not authorize activities that jeopardize the Amargosa vole or destroy or adversely modify its critical habitat, including activities at Borehole Spring that irreversibly and irretrievably commit resources and foreclose the formulation or implementation of reasonable and prudent alternatives, prior to completing the re-initiated consultation regarding the impacts of authorized activities on the Amargosa vole;

3. Award Plaintiffs their reasonable costs, fees, and expenses, including attorney's fees, associated with this litigation; and

4. Grant Plaintiffs such further relief as the Court may deem just and proper.

Respectfully submitted this 6th day of December, 2022.

DATED: December 6, 2022

*[signature: Hallie E. Kutak]*

_____
Hallie E. Kutak (SBN 322407)
Lisa T. Belenky (SBN 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, California 94612
Telephone:   (510) 844-7117
Facsimile:    (510) 844-7150
lbelenky@biologicaldiversity.org
hkutak@biologicaldiversity.org

*Attorneys for Center for Biological Diversity*